and whenever the lawyers are ready, you may proceed. Mr. Bryan. Thank you, and good morning, Your Honors. May it please the Court. I'm happy to talk about any of the issues that are presented in this case, but I'd like to begin with the government's mootness claim. Quite frankly, Your Honors, this is an argument in search of facts, and they aren't present here. What the government has claimed is that basically we gave away the sword, that we have stipulated to the entire case. And in fact, they argue that what we've done is made an unconditional guilty plea. But that's simply not true because the stipulated facts in preparation for the bench trial left open the element of knowing possession. That was left to the district judge as the trier of fact to take the facts that were stipulated and then draw that legal conclusion about whether that element was met. And so these stipulations were really nothing more than a substitute for evidence that would have been presented at a full-blown trial. But the knowledge, I guess, and intent of the defendant really isn't relevant on the question of whether or not the police acted reasonably in conducting the search. So haven't you, in fact, stipulated to all of those facts? No, I don't believe so. And we've certainly seen cases where, and I don't know whether it's incompetence or bad drafting or where a defendant has stipulated, for example, that the police seized the person with reasonable suspicion or that there was probable cause. And we've certainly seen cases in some of the government sites where a defendant stipulates that he was in knowing possession of the drugs. But all that was stipulated here were the facts, the historical facts, that the police recovered drugs from Mr. Morgan's person and from his vehicle. And then the question for the trier, and then we stipulated, of course, the lab results and those kind of things in the same way that at a trial defendants will very often stipulate the interstate commerce element of a firearm, for example. And so then what was left for the district judge was to determine knowing possession. So with regard to the initial seizure, the Fourth Amendment arguments, the reasonable suspicion, nothing in the stipulations undermine whether these facts as presented amounted to reasonable suspicion to seize him. So we don't deny, for example, that the police found drugs in Mr. Morgan's pocket. What we did not contest at the trial, but certainly did not admit, was whether he was in knowing possession of them. But doesn't, I mean, I get that you did not, that knowing was not part of the stipulation. Isn't the issue, and I appreciate that that doesn't mean the stipulation amounts to a guilty plea, but you still have the issue of whether the stipulation provides an independent source of the evidence that otherwise would have been testified to by the police and therefore either makes the denial of motion suppression harmless or not. So I wonder whether your argument is, you know, the best argument is that it didn't include the notion of knowing term or whether just the notion that since you made it clear that you were appealing the denial of the motion to suppress, that effectively the rest of the trial was subject to that preserved issue. I think that's certainly the case. And I will also point out that the government had a hand in drafting these stipulations. They admitted them as evidence at the bench trial, and the government didn't object when defense counsel said, we're doing this in order to preserve our right to appeal. And so the government certainly never indicated that, aha, we've got you now, that we've in fact won our suppression issue by drafting these stipulations this way. So there's certainly a bit of a fairness argument there that if it's a trap for the unwary, it's one that the government had a hand in setting. But I may have lost track of your question. I think that the problem with the government's argument is that there's really no way to administer their argument short of never having any stipulations because, again, the way that they drafted them here, they've never explained why these aren't good enough or what exactly a proper stipulation would be. We acknowledge that if we had stipulated knowing possession that that's effectively a guilty plea. We acknowledge that if we had stipulated reasonable suspicion that that would obviate any Fourth Amendment appeal. But the government never really makes clear what a good stipulation would be. And so I think the result of their argument would be that you would just have more full-blown trials and we wouldn't have any stipulations and district judges would have to sit through really a pro forma presentation and we'd have to call in these witnesses and get them on the stand. And I think that's just completely inefficient. But that's the issue, isn't it? I mean, whether you can have a stipulation, assuming you don't talk about knowingly, can you have a stipulation of facts that are really not in dispute or not? I think that's a fair summation. If the government is right, and they may be, I'm not suggesting that outcome, that then you can't really have a stipulation that's subject to the motion to suppress ruling. So if you don't get the conditional plea, you've got to go to trial. I think so. And then, of course, that would subject us very often to the trial penalty and the heightened guideline range for losing incentives of responsibility. So they really would have us over a barrel in those cases and the ones where they don't give us a conditional plea. And what it really comes down to is what benefit would there be if we win the Fourth Amendment issue? And if all of this evidence is suppressed, then in the hypothetical retrial that would take place, none of that evidence would be able to be presented. And so that's what we're asking for. And it's always going to be the case that evidence that is on appeal deemed to be inadmissible, then we have to imagine what the trial would have looked like without it. So imagine a 404B argument about a prior conviction. You couldn't deny that the prior conviction existed. But if you win on appeal that it shouldn't have been admitted, then you have to go back and imagine what the trial would have looked like. And then it can't be some gotcha moment that if on appeal or in some kind of stipulation the person stipulates that the prior conviction existed that all of a sudden then you're allowed to admit it. It's still subject to the rules of evidence. It's still subject to being constitutionally obtained in order to be admitted. And so that's why if we win on our suppression motion, all of this evidence would be suppressed. And so regardless of the fact of whether we concede that somewhere in the world there was a quantity of methamphetamine, it wouldn't matter because if it's suppressed it wouldn't come into a trial against Mr. Mork. Let me ask you a kind of question. It's been framed as a mootness argument. If so, that may have jurisdictional elements to it. But if it's not a mootness issue, if it's an issue of waiver or harmless error, I think legally those are significantly different. If we don't think it's a mootness jurisdictional argument, do we have to address it? Let's assume hypothetically we're not persuaded by your arguments on the Fourth Amendment issues, on the motion to suppress it. I know you're not waiving those, but in theory if we felt that those did not have merit and the issue about the stipulation was not jurisdictional, do we have to address it? No, absolutely not. If it's not jurisdictional, it might be something that the court could offer some guidance on, which is what the government has asked for. But we think the guidance would be to do what we did here and to not give away all the elements and to not admit to perhaps anything that might have been known to the police or in their minds when they were undertaking this encounter. But certainly it would be very easy to avoid and just move on to the Fourth Amendment issues, which I'd like to do now unless there are further questions about the stipulations. Ultimately, all of this evidence should be suppressed because the police seized Mr. Morgan without reasonable suspicion. What the police had suspicion of was this woman who ran across traffic into the convenience store parking lot, and they may have had some reason to be suspicious of her activities, but there was nothing individualized to Mr. Morgan based on anything that they observed from her. And then the district judge, and I'm using the magistrate judge in this report sort of interchangeably because the district judge adopted the report and recommendation pretty much wholesale, but the magistrate judge relied on six facts in order to say that there was reasonable suspicion, and some of those just aren't suspicious, and some of them are clearly erroneous when the court looks at the video evidence that contradicts findings that the court made. I'll run through these very quickly. One, it was a high crime area, which this court has said is not terribly suspicious, and this was broad daylight in a convenience store parking lot that's open for business. The woman runs across – It's really a little more specific. It's a high prostitution area, and they're on a prostitution mission. So it's not – you accurately state the law that in and of itself a high crime area has maybe some limited belief, but isn't this slightly different? Perhaps. I don't think that adds much, and it's always ironic when we see the police out looking for prostitution somehow always seem to find it, and maybe they were lucky. Maybe they decided that this woman was a prostitute without reason. Maybe because there's a lot of prostitution in high prostitution areas. You're going to find it if you look for it. I'm not sure that – Women running up to cars for the johns that are in the cars. I'm not sure that the evidence totally supported that just beyond the officer's bare assertion, but even assuming that that fact can be considered, I don't think it adds very much. We have the woman's activity, which, again, is nothing individualized to Mr. Morgan. The officer – one officer said he saw her before, although that was a very belated comment. He didn't say that at the time or in his report, and he didn't tell his fellow officers. The woman said that she's not from the area and doesn't know Mr. Morgan, which I think is more reason not to suspect that he is involved if she doesn't have any particular reason to be running up to him. The judge found that Mr. Morgan whistled at the woman, and I think that fact is clearly erroneous. That factual finding is clearly erroneous because what she actually said was she heard a whistle, and there was no reason to attribute that. But that's why she went up to his car. That's why she went to his car or his truck because she heard him whistle. Didn't they talk to her and she about the prostitution? She denied the prostitution. They didn't tell Mr. Morgan that he couldn't leave. He stays in his car, and he's on his cell phone, and after they finish talking to her, he's still there, and they go over and say, can we talk to you? And as a result of that, when they ask for his ID and he gives it to them, at that point they find out they have a warrant for his arrest. There's a warrant for his arrest now. I'll get to the warrant in a moment, but I believe he was seized a little earlier than that because what happened was they took his license away. They began to interrogate him based on what they had learned from the woman, and one of the officers said, hang tight, and that phrase, hang tight, is a command not to leave. So he was seized at that point. When they find the warrant, and I'll move on to the Streiff attenuation issue because the government relies on that so heavily. Streiff never said that the mere existence of an arrest warrant is enough to attenuate any constitutional violation. This court still applies the standard attenuation doctrine where ultimately the most important factor is how blatant and flagrant the police misconduct are. And what we have in this case, I think just sort of overarching all of these arguments, is really remarkably poor judgment on the part of the police officers to seize Mr. Morgan based on very, very flimsy suspicion and to run roughshod over his Miranda rights and question him in a way that the magistrate judge said was a textbook case of how you're not supposed to comply with Miranda. And so either these police officers were fairly incompetent or they were intentionally running roughshod over Mr. Morgan's constitutional rights. And either situation call out for the deterrent value of the suppression remedy. And it's precisely that situation where the existence of the warrant should not attenuate the constitutional violation because the police acted so purposely and flagrantly. And that really undergirds all of our arguments, especially with regard to good faith, for example, and the police intent to mislead the state magistrate in terms of getting the warrant. All of it is a situation where the police are taking actions either as a result of very, very poor judgment or outright intent to violate constitutional rights. That's what the suppression remedy, the exclusionary rule call for because it would serve a deterrent value in either of those circumstances. Let me ask one question. Assume that we find that your challenges up until the time they got to the safe, we reject your arguments up until that point. Okay. And so in other words, assume they had the right to search the car after doing the search and finding the drugs on him. You understand? And they did some of that and then they stopped when they got to the safe, then went and got the warrant. Do I have that correct? I think I understand, yes. What's your authority for the idea that they did not have the right, if they had a right to search the car, to search the safe? Oh, well, they would have had the right to search anything within the car assuming they had probable cause to do so. But I've asked you to assume they're doing a search of an automobile incident to the rest and the finding of the drugs. What's the authority that they did not have the right to? And I know you dispute that. Right. Continue. I guess are you asking sort of an inventory or inevitable discovery argument? Well, I'm just trying to think, is your argument about the safe any different than searching the car in the first place? No, we don't draw that line of distinction, other than to say that the police did look in the vehicle and didn't see anything else in plain view. And so there's certainly nothing else in the car that would add to any suspicion with regard to the safe in particular. But, yes, the probable cause to search the car would apply to containers within the car. Thank you. If there are no other questions at this time, we've reserved some time for rebuttal. Thank you, Mr. Bryant. Mr. Cook. May it please the Court, I'd like to start with the mootness issue. As one preliminary point, I don't think that there's any kind of unfairness here in however the Court rules on the jurisdictional mootness issue. As we've explained in the brief, the defendant, I think, would be allowed to get out of his stipulations if the Court concluded that they mooted his suppression issues. And the government has never said in this case that he couldn't enter into a conditional guilty plea. The conditional guilty plea would not be able to cover this discovery of the straw before they searched with the search warrant because that's simply not case dispositive. Likewise, I don't think that there's really a way in which a defendant is going to lose out on acceptance regardless of what rule the Court adopts because under a conditional guilty plea you get acceptance and it is possible to go to trial to preserve an issue and still receive acceptance if you're not contesting the evidence. The question here, I think, is really twofold. First is what's in a very formal and doctrinal sense under the mootness case law the effect of a stipulation? And I think the answer to that is actually very simple. I mean, the ordinary understanding of a stipulation is that it removes the need to introduce evidence. And so that's why it is no longer going to create an avenue for a suppression argument is because the defendant has agreed to that fact and you don't have to introduce the evidence. Why is that a mootness issue? I understand the technical argument. I may be wrong here, but I think of mootness and I think of something like if something happened that made this charge something that could not be a crime, like the statute is rescinded or something like that. Why is this any different than if you had a negligence case and the defendant admitted they acted unreasonably, the evidence might prevent them from winning and just like this stipulation might prevent them from winning. But this seems to be an evidentiary issue, not a jurisdictional mootness issue. And I think that's important because the outcome is whether or not we have to address it. We may elect to address it if it's not jurisdictional, but it just doesn't feel like a mootness issue. It feels like maybe a favor issue, maybe an evidentiary issue. It just doesn't seem to have the frameworks of what we normally think of in mootness about the crime couldn't have been pursued altogether anyway. I think that's a very important question and candidly when I first started thinking about this case, that was definitely an issue I struggled with. The first cut of why I concluded it is a mootness is because a bunch of cases talk about it in terms of mootness. But that's not a very satisfactory answer. I think there is a doctrinally sound reason for why it is moot. And the core of mootness is that it takes an issue away from the court that it doesn't have to decide. Put differently, if you looked at this court's ruling in Ketter, is it impossible that however you decided it, that it wouldn't make a difference to the parties? And that's different than just this harmlessness question. And if the answer to that is yes, then it's moot. And so what might be intuitively a close analogy or a closer analogy that I think can help bring this into focus? Don't we have a case or maybe more than one case that suggests that with respect to a stipulation, it's really different than a guilty plea in the sense that even though a defendant may have stipulated to certain facts, the court can't direct a verdict in favor of the government and ultimately the court, the prior fact, has to accept the contents of the stipulation and nonetheless render a verdict. So doesn't that make a difference here? I don't think it does, but that's, I think, also a helpful question to illuminate what's its doctrinally what's in focus here. And on top of that, as Mr. Bryant pointed out, he did not, his client did not admit one of the elements of the offense. So you don't have a complete stipulation to all of the elements of the offense. Right. And so I think there is a very important difference between the question about the certainty of whether a defendant will be convicted and the question about whether there is still a running dispute over a piece of evidence that a defendant can litigate. And so the stipulation means that the government doesn't have to introduce the evidence from the Fourth Amendment challenge stop, and that's what cuts off and creates mootness. And so also to go back to Judge Quattlebaum's question about why is this mootness as opposed to some other doctrine like harmlessness or something like that. And I think that you can see it when you consider a case where parties choose not to introduce a piece of evidence. And there could be disputes about Fourth Amendment issues. There could be a dispute about hearsay, whatever. If that evidence is never introduced, the adjudication by the court about the validity of that evidence is moot. Like there is nothing the court could say about that that could have effect on the case when it was never introduced. But the cases also, in the context of guilty pleas, allow for a conditional guilty plea that preserves an issue. Isn't this effectively what happened here? This was a conditional stipulation in the sense that both parties agreed that the purpose of it was to allow the defendant to litigate a suppression motion, so why shouldn't we treat it the same as a – and there was no other bargain. I mean, that was it as best I can tell. So it doesn't have any of the other hallmarks or concerns of a guilty plea, so why couldn't we just say that? No, and I think actually that maybe crystallizes best what concerns the government the most here because on the one hand, I think you're exactly right. If this case, if you said it's moot, we went back, did a conditional guilty plea, it would come back looking awfully similar with one really important difference, and that really important difference is I think what should really factor in why courts should not be inviting of these kinds of stipulated bench trials, and that is – and I don't mean to in any sense criticize the district judge here and what I'm about to say, but when you go and look at this bench trial, the transcript for it says it was 13 minutes. It was 11 pages of transcript. Seven of it were spent on the trial, and then the remaining portion was for the – talking about upcoming sentencing proceedings. And so really just a rough cut, that's about eight minutes for this bench trial. The defendant's own statements at that bench trial, the only statement he makes is at the end of it after the court finds him guilty, he says, yes, your honor, and that's at joint appendix page 315. Compare that to a well-conducted Rule 11 colloquy. A well-conducted Rule 11 colloquy has all kinds of protections in it for defendants and the government, and it streamlines things for the courts by ensuring that this was a knowing and voluntary plea under Rule 11b-2. The court has to personally question the defendant to ensure that the – But what if the government won't agree to it? Sometimes – I mean some of the cases on this, the government, without at least from reading the cases, without a lot of explanation, doesn't agree, and there may be a reason that they may be acting aggressively or they may have a reason that doesn't show up that pertains to this case. And I get that a conditional plea would solve this issue, but the government has some say over that. And if you won't agree to it, I mean, I think the implication is, and you get to it a little bit, it seems like your criticism, I know you're not trying to personalize it on the district court, is that these proceedings you don't like and they would not continue to exist or go forward in the same way. That's the outcome of what you're asking for, I think. That's right. And, you know, the very short of the answer to that is that in our system we have guilty pleas and we have trials, and don't blur the distinction as much as this takes you toward. And so the defendant who faced with a government objection to a conditional guilty plea is entitled to go to trial and can even do that while preserving acceptance points, and in that sense is not harmed in any fashion. And you have what would then be a trial for the court to review. You know, Bundy says no conditional pleas on non-case dispositive issues, and the principal reason for that is because you get into adjudicating things you don't have to decide because they're harmless. And if you have a trial, it's up to the government to put on its evidence to show that a piece of evidence is harmless if that's what they want to say and this court, you know, would be inclined to adjudicate. And so, you know, the essence of what I'm saying here is that there's guilty pleas. We have a really good system for those with Rule 11 colloquies. We have trials with procedures that produce fair results where the defendant calls witnesses if he wants, cross-examines, evidence is presented, the court gets a full record, and a seven-minute trial is just not a good substitute for that. It's you, I mean, take the straw issue in the case about whether before they got a search warrant the search for the straw was, you know, improper. There's no way that that straw makes a difference in this case. And you try to piece together a harmlessness analysis out of a stipulated bench trial, but the parties may stipulate in a fashion that really obscures what the strength of the evidence is, and that's not a good way for courts to begin processing cases. You know, we have trials, guilty pleas, and I think it's better to keep those categories more distinct than this body of case law is letting you do. But I also want to just go back to more pure doctrinal points about the effect of stipulations, and I think that courts treat stipulations in a way that doesn't allow them to have these kinds of caveats that you're being led toward in this context. I mean, a party stipulates to something that's supposed to take litigation over that fact off the table, and indeed, even if there's a retrial, you're not typically allowed, absent some pretty special set of circumstances, to take back that stipulation. So you're saying from a matter-of-law standpoint, the concept that the case proceeds after the ruling on the motion to suppress, kind of subject to that as long as you kind of keep preserving it, is not correct. That's right. You can't conditionally stipulate, in other words. Is that your position? Yeah, and I don't think there's really a sound doctrinal basis to say that you can do that, and it makes sense, given what the office of a stipulation is, and the office of a stipulation is to end litigation over a particular topic, and so it's at least as to the parties complaining about it. But aren't there cases that suggest that a lawyer is free to admit certain elements of an offense as part of a contested trial so long as he or she has a consent of her client? How is this any different? Yeah, no, I think that's true, and those cases don't allow you, once you've made that stipulation, to continue fighting over that fact. But they do, as the McCoy case from the Supreme Court shows, if there wasn't agreement from the defendant for admission of the whole crime, for example, then that's a problem under ineffectiveness standards. And that goes back to why this defendant, if this court said, look, your stipulation moots this, I think gets out of these stipulations, and we go back and he either enters into a conditional guilty plea or we have a regular trial, and if he wants to preserve acceptance, then he should just not contest any of the facts at that trial. So I think that the defendant is really, his interests remain protected here. The point about the procedure here is in no respect to play gotcha to any of the parties. It's just what for the system as a whole produces the most secure and fair adjudication of guilt. Guilty pleas have all of the waivers built into them for a reason, because they're designed to produce finality. And trials give you a broad range of protections, but issues that don't matter no longer become a basis for complaint on appeal under doctrines, most importantly, harmlessness. But, you know, I'm just, I'm trying to think of this, but I think I kind of understand the doctrinal issue here, and to me that hinges on whether, I mean, it's important whether it's in the mootness bucket or another bucket in terms of whether we have to address it. I understand why you think it's mootness that we may, anyway, I'm not sure about that. But aside from the kind of pure theoretical doctrinal issue, I mean, doesn't, isn't there something impractical about what you're talking about? I mean, there isn't a whole lot of question about those facts, and this may have been too expeditious if it's truly eight minutes. But if there's really no issues besides the legality of the suppression, and the government won't agree to a conditional plea, what's the harm of a district court saying, look, I got a bunch of cases, why do I have to impanel a jury or go through a bench trial when none of those issues are contested? Right. Sorry, my voice is breaking up here. I got a cold. I think that the mootness doctrine, in a certain sense, is kind of a pain for courts, but that's a consequence of a jurisdictional limit, and the core of mootness doctrine is if there's not a dispute over which a federal court can make a material difference, a meaningful difference,  if it can't make a difference, then it shouldn't be deciding that question, and that's just a feature of Article III power. And occasionally jurisdictional problems, when they pop up, create a lot of trouble. And one of the reasons I think this is a good case to tackle is that because jurisdictional issues aren't waivable and they do pop up, it's very helpful for parties to know what the ground rules are and what the limits are and when something goes awry, so that future litigants who are considering, well, should I do a stipulated bench trial, will know what would happen with that. And so just simply having a rule, regardless of what the rule is, almost is better than having deep uncertainty about what the rule is. And so in that regard, I think it is very helpful. And in this case, I don't think the defendant gets privates, regardless of what the court does. Do you want to turn to the merits before you run out of time here? Sure. Do you want to get some water before you do that? Yeah, maybe I will. Thank you, Your Honor. I think that the defendant here is, there isn't, one threshold question is, when is the point of seizure? He says when he's told hang tight, when the officer is going to check on his identification. And at that point, I think that's right when you take into account that the police first approach the woman, the other man who is near the bed of the truck walks away, and when they go and talk to him, he's on his cell phone, and one of the officers says, I want to talk to you, and the defendant keeps talking on the phone. I don't think that that's a particularly coercive environment in that situation. And it's agreed upon that, essentially, the point of seizure is at least when the officer asks to hang tight. Now, I think that when you're checking an identification, that doesn't necessarily trigger a seizure, and so it could be later, but it doesn't matter. At that point, there's already plenty of evidence to have reasonable suspicion that this defendant was a participant in prostitution, and that flows from a variety of facts. It's an area where prostitution regularly occurs. They had spotted the woman pretty frequently walking along this road, Jefferson Davis Highway. In the past? In the past, and that's at Joint Appendix 145. She ran across six lanes of traffic, causing traffic to slow, and approached him. As one of the officers testified, she basically ran out in front of traffic to get over to this truck. She said she was responding to a whistle from the area. She did not know the defendant, and she said she was not from Richmond, even though she was seen walking frequently along this highway, and she admitted using Tremadol without a prescription. One of the officers testified that prostitutes often have drug addictions, and she had no personal items with her, despite that she was from out of town. There was this brief interchange between the defendant and the woman the police suspected as a prostitute, and that kind of brief conversation is typical for someone asking for. . . Mr. Bryant says that all of this really is the focus is on the woman, not his client. But it strikes me that the nature of the offense, by definition, suggests that someone else would necessarily have to be involved. So what is your response to that, that really the focus should have been on the woman and not Mr. Morgan? I see my red lights on. I'll be quick. I agree that with what Your Honor is suggesting, this is a crime that requires two participants. And so if she's standing by the door of the truck, the defendant's inside, that provides, I think, reasonable suspicion for them to investigate him. But the key point is that they ask for his identification when the focus has been on her. They go back to their squad car, discover that he's got a warrant, and at that point, Utah v. Strieff kicks in. Similarly, I think that the Miranda issue is really at far field on the Strieff inquiry because this questioning doesn't really even begin until they've already properly seized him and discovered that he had an existing arrest warrant. And so, as Strieff says, when there's a totally valid, uncontestedly valid warrant and you arrest somebody, you are at that point not able to complain about your detention because the officer was doing what he had to do at that point. He knows that there's an arrest warrant. And so there was this investigation into prostitution. They learned he's got a warrant. After that, there's no Fourth Amendment intrusion at all in this case. All right. Thank you very much, Mr. Cook. Thank you, Your Honor. Thank you, Your Honor. Just a couple of very brief points. First, I want to clarify one thing. I don't mean in using the word unfairness. I'm not speaking specifically to Mr. Cook or even necessarily in this case because as he acknowledges, if he's correct about our mootness issue, that this would go back to the district court and there would be further proceedings, either a full-blown trial or perhaps a conditional plea. What I mean in the sense of unfairness is that it would be unclear to parties going forward. And if the court says that this isn't good enough, then nobody would really know what's good enough. And I really didn't hear from the government's argument any sense of any stipulations that would ever really be appropriate and anyone would feel safe entering into without worrying about mooting future appeals. So I think that's the unfairness I wanted to highlight. I think he addressed it that there's not any. He's trying to say that that's a proceeding that doesn't have the hallmark of protections for both parties. I think he's probably agreeing with you that the reason he's not giving an example of what's good enough is I think they're not happy with that type of procedure, maybe rightfully so. If that's their position, I think it would also lead to defense attorneys being gun-shy about entering into any stipulations because you would always want to make sure that you're not giving anything away or that later on you're not going to be accused of accidentally mooting something. And I think that's just a really inefficient procedure. And it's also funny that nobody's ever noticed it up until this case, that there have been countless stipulated trials up until now and we're only now discovering it's moot. Including the one right before, the argument right before this one. That's absolutely right. And I don't know, well, I'm not going to comment on that because our office was counseling the district court on that one, so I'd rather not weigh in on that case. I would like to turn just very briefly to one comment about the reasonable suspicion analysis because one thing that Mr. Cook reminded me was that Mr. Morgan was on the phone when the police first encountered him, which I think it's, again, implausible to think that this woman would run across traffic hearing a whistle from someone who was on the phone and to be able to hear that across that six lanes of traffic. And if the court watches the video, his diesel engine is very loud. It's hard to hear just normal conversation steps away from it. And so I think it's a clearly erroneous finding of fact based on the video evidence that she was responding directly to him. And the other thing that's plainly obvious in the video is that she came around, passed him to the passenger side of the vehicle, and there's another man standing at the passenger side of the vehicle that she's standing basically next to. And then when the police arrive, that man walks away and the police don't engage him at all. And so I think if there was any, and I understand the idea that it takes two to tango in a solicitation case, but I think if anything the suspicion would have been more obvious as to the person that she's actually standing next to rather than someone who was on his phone and didn't appear to be interacting with her when the police arrived. So with that, I think unless there are any other questions, I think our arguments are clear in the briefs. All right. Thank you very much. Thank you.
judges: Albert Diaz, A. Marvin Quattlebaum Jr., Max O. Cogburn Jr.